UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHLEEN A. ZARNOFSKY-YOUKER,

                Plaintiff,

v.                                                             6:15-CV-0170
                                                               (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ            PETER ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick St.
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.              REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

       This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 17.)  This case has proceeded in accordance with General

Order 18.

       Currently before the Court, in this Social Security action filed by Kathleen A.

Zarnofsky-Youker ("Plaintiff") against the Commissioner of Social Security ("Defendant"

or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings.  (Dkt. Nos. 14, 15.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on August 14, 1965.  (T. 127.)  She completed high school.  (T. 140.)  Generally, Plaintiff's alleged disability consists of bulging discs, osteoarthritis, fibromyalgia, right foot deformity, degenerative joint disease, cervical radiopathy, disintegrated hip joint, depression, anxiety, and insomnia.  (T. 139.)  Her alleged disability onset date is June 15, 2008.  (T. 73.)  Her date last insured is December 31, 2013.  (*Id.*)  She previously worked in customer service and as a medical transcriptionist.  (T. 141.)

### B.      Procedural History

On February 28, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 136.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 9, 2013, Plaintiff appeared before the ALJ, James G. Myles.  (T. 39-71.)  On October 17, 2013, ALJ Myles issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 19-38.)  On December 30, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-33.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013 and Plaintiff had not engaged in substantial gainful activity since June 15, 2008. (T. 24.) Second, the ALJ found that Plaintiff had the severe impairments of obesity, fibromyalgia, degenerative arthritis of the right knee, osteoarthritis, degenerative disc disease, degenerative joint disease, cervical radiculopathy, insomnia, and depression. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25-27.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (T. 27.) The ALJ determined that:

> [a]fter standing or walking for 15 minutes, [Plaintiff] requires the opportunity to sit for [two] minutes and/or work from a seated position. After sitting for 30 minutes, [Plaintiff] requires an opportunity to take a stretch break at the workstation. [Plaintiff] can occasionally perform overhead reaching, crouch, balance, stoop, climb, kneel and crawl. However, she should avoid ladders, ropes and scaffolds. [Plaintiff] can perform frequent but not continuous handling and fingering. Further, [Plaintiff] should avoid concentrated exposure to work hazards, loud noises and flashing lights. Although [Plaintiff] can have occasional interpersonal contact in the workplace, she should not work as part of a team. Extensive contact with the public should not be a critical function of [Plaintiff's] job responsibilities. [Plaintiff] is limited to routine, unskilled work.

(T. 27-28.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 31-33.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly assess Plaintiff's credibility. (Dkt. No. 14 at 15-21 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ disregarded and violated the Regulations when employing the consultative medical examiners. (*Id.* at 21-24.) Third, and lastly, Plaintiff argues the ALJ failed to give controlling weight to the opinion of the treating provider and failed to properly analyze the medical evidence. (*Id.* at 24-27.)

## B.     Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues substantial evidence supported the ALJ's physical RFC findings. (Dkt. No. 15 at 3-4 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly weighed the medical evidence. (*Id.* at 4-5.) Third, Defendant argues the Social Security agency properly hired a consultative examiner. (*Id.* at 5-6.) Fourth, and lastly, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 6-9.)

## III.    RELEVANT LEGAL STANDARD

## A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

For ease of analysis, Plaintiff's arguments will be addressed out of order.

### A.    The ALJ's RFC Determination and Weight Afforded to Opinions in the Record

An RFC is the most Plaintiff can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In formulating an RFC, the ALJ will base his determination on all the relevant evidence in Plaintiff's case record.  *Id.*

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues the ALJ's physical RFC determination was not supported by substantial evidence because the ALJ improperly weighed the medical evidence in the record. (Dkt. No. 14 at 24-27 [Pl.'s Mem. of Law].)[1] In support of her argument Plaintiff alleges the ALJ made numerous errors in his assessment of the medical evidence in the record.

Plaintiff first argues that the ALJ improperly afforded "significant weight" to a single decision maker ("SDM"). (Dkt. No. 14 at 24 [Pl.'s Mem. of Law].) To be sure, assigning any evidentiary weight to an single decision maker's opinion is an error. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012) ("SDMs are non-physician disability examiners who may make the initial disability determination in most cases

---

[1]     Plaintiff does not question the ALJ's mental RFC determination.

without requiring the signature of a medical consultant."), *see Yorkus v. Astrue,* No. 10-2197, 2011 WL 7400189, at *5 (E.D.Pa. Feb. 28, 2011) (collecting cases). However, affording weight to an SDM may be harmless error if the ALJ would have reached the same conclusion even if he had assigned no evidentiary weight to the SDM's assessment. *Hart*, 32 F. Supp. 3d at 237.

Plaintiff's argument is misplaced. The ALJ stated in his decision that he "considered the state-agency assessments" and afforded them "significant weight." (T. 31.) The ALJ made this statement at the conclusion of his evaluation of the medical opinion evidence in the record provided by consultative examiners Pamela Tabb, M.D. and Dennis Noia, Ph.D. (T. 29-31.) The ALJ use of the term "state-agency assessments" was clearly referencing the consultative examiners' opinions, not the opinion of the single decision maker. The ALJ's decision did not reference the opinion of the single decision maker, which was located in the record at Exhibit 2A. Further, the SDM opined that Plaintiff was capable of light work. (T. 75.) The ALJ's ultimate RFC determination was for less than a full range of sedentary work. (T. 27-28.) Had the ALJ provided the SDM's opinion significant weight, as Plaintiff alleges, his RFC determination would have accounted for far fewer limitations. Therefore, Plaintiff's argument that the ALJ's reference to "state-agency assessments" included the assessment of the single decision maker is without merit.

Plaintiff also asserts that the ALJ committed legal error by failing to mention or discuss the medical evidence provided by "Dr. Sullivan, a treating source with a longitudinal history of providing treatment." (Dkt. No. 14 at 26 [Pl.'s Mem. of Law].) Again, Plaintiff's argument is without merit. Plaintiff fails to cite to the record containing

treatment notations from a Dr. Sullivan.  The record does not contain treatment notes, or reference to, a Dr. Sullivan.

Plaintiff argues the ALJ erred in his assessment of the medical opinion provided by Dr. Tabb.  (Dkt. No. 14 at 25 [Pl.'s Mem. of Law].)  First, Plaintiff argues the ALJ impermissibly "cherry picked" Dr. Tabb's report by giving weight to the portions that supported his RFC and rejected portions that supported a finding of disability.  (*Id.* at 25.)  To be sure, the ALJ is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Here, the ALJ properly assessed Dr. Tabb's opinion.

Dr. Tabb opined in a medical source statement that Plaintiff had "mild to moderate" limitations in bending and lifting, and "moderate" limitations for "prolonged" standing and walking.  (T. 377.)  She further opined Plaintiff had "mild to moderate" limitations for working at unprotected heights.  (*Id.*)  Here, the ALJ provided an accurate and complete recitation of Dr. Tabb's examination, findings, and medical source statement.  (T. 29.)  The ALJ provided the entirety of Dr. Tabb's opinion "some weight." (T. 31.)  Plaintiff's brief fails to illuminate what aspects of Dr. Tabb's opinion the ALJ relied on and what portions the ALJ rejected.  Further, Plaintiff's brief fails to indicate which portions of Dr. Tabb's opinion "supported a finding of disability."  (Dkt. No. 14 at 25 [Pl.'s Mem. of Law].)  In addition, the ALJ's ultimate RFC determination limiting Plaintiff to less than a full range of sedentary work was not inconsistent with Dr. Tabb's medical source statement.  Therefore, the ALJ did not impermissibly "cherry pick" Dr. Tabb's opinion because he thoroughly discussed the whole of her opinion and a

thorough reading of the record and decision failed to support Plaintiff's contention that the ALJ selected only the favorable portions of Dr. Tabb's opinion.

Second, Plaintiff argues the ALJ committed legal error in affording Dr. Tabb's opinion more weight than the opinion of Plaintiff's treating rheumatologist, Martin Morell, M.D. (Dkt. No. 14 at 25-26 [Pl.'s Mem. of Law].) In a letter dated February 7, 2013, Dr. Morell stated that Plaintiff suffered from fibromyalgia, osteoarthritis in her lower back, and right hip labral tear. (T. 346.) He indicated Plaintiff had a functional capacity evaluation ("FCE") on July 3, 2012 which concluded Plaintiff was unable to work. (*Id.*) Dr. Morell stated that he read the evaluation and agreed with the assessment. (*Id.*)

The ALJ afforded Dr. Morell's February 2013 statement "little weight." (T. 31.) The ALJ reasoned the opinion was based on an FCE performed by an occupational therapist, who was not an acceptable medical source. (*Id.*) The ALJ also reasoned the FCE was inconsistent with the record and "suggest[ed] limitations well beyond [Plaintiff's] own reported activities and recent treatment notes." (*Id.*) As an example of an inconsistency, the ALJ cited progress notations from Plaintiff's treating primary care providers which indicated Plaintiff was "general stable." (*Id.*)

Affording more weight to a consultative examiner's opinion than to a treating source's opinion does not automatically constitute legal error warranting remand. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), and 404.1527(e).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015) (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by plaintiffs' counsel)); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Therefore, affording more weight to a consultative examiner over a treating physician does not warrant automatic remand.

Plaintiff also argues the ALJ offered "no real explanation" for affording more weight to Dr. Tabb's opinion. (Dkt. No. 14 at 25-26 [Pl.'s Mem. of Law].) As stated herein, the ALJ provided his reasoning for affording less weight to Dr. Morell's opinion; namely, the doctor's opinion was based on an FCE performed by an occupational therapist, who was not an acceptable medical source, the FCE was inconsistent with the record, and inconsistent with Plaintiff's testimony. (T. 31.) In sum, an ALJ may afford greater weight to the opinion of a consultative examiner and here the ALJ provided reasoning to support his determination; therefore, the ALJ did not commit legal error in affording "some weight" to Dr. Tabb's opinion and "little weight" to Dr. Morell's opinion, nor did the ALJ commit legal error in failing to provide support for his determination.

Plaintiff argues Dr. Morell's opinion should be afforded greater weight because the opinion was supported by "an objective functional capacity evaluation performed by a certified physical therapist." (Dkt. No. 14 at 26 [Pl.'s Mem. of Law].) However, an FCE evaluation is not objective evidence. *Russitano v. Colvin*, No. 6:14-CV-0403, 2015 WL 4496383, at *6 (N.D.N.Y. July 23, 2015) (ALJ properly afforded less weight to FCE evaluation because FCE results did not constitute objective evidence). The case here is strikingly similar to *Russitano*.

In *Russitano*, the Court concluded that the ALJ properly afforded the consultative examiner, Dr. Tabb, more weight than an FCE evaluation conducted by a physical therapist at the request of plaintiff's treating rheumatologist, Dr. Morell. *Russitano v. Colvin*, No. 6:14-CV-0403, 2015 WL 4496383, at *6 (N.D.N.Y. July 23, 2015). The Court in *Russitano* reasoned that the ALJ properly concluded that the medical evidence in the record did not support the FCE findings which indicated plaintiff was incapable of performing sedentary work. *Russitano*, 2015 WL 4496383, at * 5-6. Further, the Court held that the conflict between the FCE results and other medical evidence in the record was for the ALJ to resolve at her discretion. *Id.* at *6 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Here, as in *Russitano*, the ALJ properly resolved a conflict of evidence in concluding that medical evidence in the record did not support the FCE, and Dr. Morell's statement agreeing with the results. For example, the FCE stated Plaintiff had slightly decreased range of motion in bending; moderately decreased range of motion in overhead reaching, neck flexion and extension, and neck rotation; and markedly decreased range of motion in squatting. (T. 521-522.) However, multiple doctors

observed on physical examination that Plaintiff had full range of motion. Plaintiff's treating sources noted full range of motion in all extremities. (T. 265, 288, 296, 307, 474-475, 479, 488, 500.) Plaintiff's treating orthopedist, Michael Wiese, M.D. observed that Plaintiff walked with a stable gait, moved "really easily," and transitioned easily from chair to standing. (T. 365.) Another orthopedist, Denny Battista, D.O., noted Plaintiff had reduced range of motion in her cervical spine, full range of motion in both upper extremities, full range of motion in her lumbar spine, and full range of motion in her lower extremities. (T. 428, 431.) Dr. Tabb also observed that Plaintiff needed no help getting on and off the exam table and was able to raise from a chair without difficulty. (T. 376.) Plaintiff's treating pain management doctor, Kurt Foxton, M.D. noted decreased range of motion was not present on examination. (T. 264.) Dr. Morell noted normal range of motion in Plaintiff's neck, "adequate abduction internal and external rotation" in her shoulders, normal range of motion in her elbows, adequate range of motion in her hips, and crepitus in her knees. (T. 356.) Therefore, the FCE did not constitute objective evidence and the ALJ did not err in resolving a conflict between the FCE results and other medical evidence in the record.

In sum, the ALJ did not err in affording weight to the medical opinions in the record and the ALJ's RFC determination was supported by substantial evidence. The ALJ's RFC was supported by the objective medical evidence in the record, such as the opinion of Dr. Tabb, and treatment notations and observations by Plaintiff's treating sources and Dr. Morell. Therefore, for the reasons stated herein and further outlined in Defendant's brief, the ALJ did not error in formulating his RFC determination.

### B.     The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his

pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms was not entirely credible.  (T. 30.)  In making his credibility determination, the ALJ relied on the objective medical evidence in the record, Plaintiff's medical treatment and procedures, Plaintiff's testimony regarding her activities of daily living, and observations made at the hearing.  (T. 28-31.)

Plaintiff provides various arguments regarding the ALJ's credibility determination. Plaintiff essentially argues the ALJ inaccurately recounted facts, erroneously relied on personal observations, and none of the treating sources raised concern about Plaintiff's complaints.  (Dkt. No. 14 at 15-21 [Pl.'s Mem. of Law].)  For the reasons stated herein, and further outlined in Defendant's brief, the ALJ did not err in his credibility determination.

First, the ALJ did not inaccurately recount the facts.  Plaintiff specifically argues the ALJ erred in discounting Plaintiff's statement that she could only lift two pounds and walk down stairs with statements that she can walk one eighth of a mile and care for children.  (Dkt. No. 14 at 17 [Pl.'s Mem. of Law].)  However, this Court agrees with Defendant, that Plaintiff extracts the ALJ's statements out of context.  (Dkt. No. 15 at 8-9 [Def.'s Mem. of Law].)  The ALJ, in accordance with the Regulations, determined that Plaintiff's statements regarding her limitations were not supported by her own testimony

regarding her activities of daily living.  (T. 30-31), *see* 20 C.F.R. § 404.1529(c)(3)(i).

Plaintiff's testimony that she could only lift two pounds and walk down stairs once a

week was inconsistent with Plaintiff's testimony regarding her activities on the whole.

For example, Plaintiff testified that she could care for her children, drive, shop, and

manage her own self-care.  (T. 30-31.)  Plaintiff reported to her pain management

specialist that she was able to perform her daily activities, her pain was "tolerable" with

medication, and she had a "functional quality of life."  (T. 238, 245, 248, 257, 261.)[2]

Plaintiff reported to Dr. Wiese that was she "doing great" and "walked at Disney for a

week."  (T. 365.)  Therefore, the ALJ properly relied on Plaintiff's activities of daily living

in his credibility determination.  *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir.

2009) ("the ALJ correctly noted that [plaintiff] was able to care for his one-year-old child,

including changing diapers, that he sometimes vacuumed and washed dishes, that he

occasionally drove, and that he watched television, read, and used the computer"), *see*

*Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) ("The ALJ also relied on [plaintiff's]

Daily Activities Questionnaire on which she indicated that she performed numerous

daily tasks, such as walking her dogs and cleaning her house, that are consistent with a

residual capacity to perform light work.").

Second, Plaintiff argues the ALJ's credibility determination was improper

because he discredited the opinions of Dr. Morell and was "ambiguous" in the weight he

afforded the medical opinions.  (Dkt. No. 14 at 19-21 [Pl.'s Mem. of Law].)  As discussed

herein, the ALJ properly afforded weight to the opinion in the record.  In addition, the

ALJ did not discredit Dr. Morell's opinion as Plaintiff asserts, instead, the ALJ afforded

---

[2]        On December 7, 2010, during one of her first meeting with pain management, Plaintiff
reported pain interfered with "driving, walking, work moderately, childcare, sweeping, gardening, leisure
activities and sleep severely."  (T. 264.)

the opinion "little weight." (T. 31.) Further, the ALJ's decision was not "ambiguous" regarding the weight afforded to Plaintiff's medical sources. Even a complete lack of specific weight afforded to an opinion would not warrant remand if the ALJ's reasoning could be discerned. *Curtis v. Colvin*, No. 11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court is able to discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed").

Plaintiff argues the ALJ erred in relying on his personal observations of Plaintiff's demeanor at the hearing. (Dkt. No. 14 at 17 [Pl.'s Mem. of Law].) SSR 96-7p clearly allows ALJ's to take personal observations into consideration when making a determination: "[i]n instances where [Plaintiff] attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). To be sure, however, the ALJ "is not free to accept or reject [an] individual's complaints solely on the basis of [the ALJ's] personal observations...." SSR 96-7p, at *8. However, here, the ALJ did not make a credibility determination based "solely" on personal observations. The ALJ based his credibility determination on the objective medical evidence in the record and based on the other factors outlined in the Regulations.

Overall, substantial evidence supported the ALJ's credibility determination. Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the

record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F. Supp. 2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Plaintiff here has not shown that no reasonable factfinder could have reached the ALJ's conclusions; therefore, it is recommended that the ALJ's credibility determination be upheld.

## C.    Consultative Examiner under 20 C.F.R. § 404.1519h

Plaintiff argues the ALJ committed legal error because he failed to follow the Regulations when he hired a consultative examiner from an outside source without first seeking the consultative exam from Plaintiff's treating provider.  (Dkt. No. 14 at 21-24 [Pl.'s Mem. of Law].)

During the course of an application for Social Security Disability benefits the Commissioner may purchase a consultative examination.  20 C.F.R. § 404.1519a.  The purchase of a consultative exam is done at the discretion of the Commissioner.  *Id.* at § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added).  Generally, an exam is ordered if information cannot be obtained from treating medical sources, to help the Commissioner resolve inconsistencies in the record, or to fill in any gaps in the

record.  *Id.* at § 404.1519a(b)(1)-(4).  A consultative examination can only be performed

by a "qualified medical source" who is licensed in the State and has "the training and

experience to perform the type of examination or test [the Commissioner] will request."

*Id.* at 404.1519g.

The Regulation at 20 C.F.R. § 404.1519h states:

[w]hen in our judgment [plaintiff's] treating source is qualified, equipped,
and willing to perform the additional examination or tests for the fee
schedule payment, and generally furnishes complete and timely reports,
[plaintiff's] treating source will be the preferred source to do the purchased
examination. Even if only a supplemental test is required, [plaintiff's]
treating source is ordinarily the preferred source.

The Regulations state that a treating source will not be used in such cases where

the treating source "prefers not to perform such examinations or does not have the

equipment," there are conflicts or inconsistencies the treating source cannot resolve,

plaintiff prefers to use a different source, or the treating source may not be a "productive

source."  20 C.F.R. § 404.1519i.  The Regulations also state that "[t]he medical sources

who perform consultative examinations will have a good understanding of [the Social

Security Administration's] disability programs and their evidentiary requirements."  *Id.* at

404.1519n.

First, the ALJ has discretion to order a consultative examination to further

develop the evidentiary record. *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y.

2012); *see Serianni v. Astrue,* No. 6:07–CV–250, 2010 WL 786305, *5 (N.D.N.Y. Mar.

1, 2010); 20 C.F.R. § 404.1519a.

Second, the ALJ has discretion in seeking a consultative examination from a

plaintiff's treating source; "[w]hen *in our judgment* your treating source is qualified,

equipped, and willing to perform the additional examination or tests for the fee schedule

payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination." 20 C.F.R. § 404.1519a(a). Therefore, an ALJ's failure to seek a consultative examination, or a consultative examiner from a treating source, does not constitute legal error because under the Regulations the ALJ is not obligated to order a consultative examiner, nor is he obligated to order a consultative examination from a treating source.

Here, ALJ did not abuse his discretion in not ordering a consultative examination from Plaintiff's treating provider, Dr. Morell. Plaintiff was represented by counsel and afforded the opportunity to provide all of her records from treating providers.[3] Therefore, any error in seeking a consultative examiner from a treating provider would be harmless, because Plaintiff supplied a thorough medical record, complete with a functional capacity evaluation. *Fink v. Barnhart*, 123 F. App'x. 146, at 148 (6th Cir. 2005) (holding that the ALJ was not obligated to order consultative examination conducted by plaintiff's treating source and further any error would be harmless because plaintiff's medical record was complete). Plaintiff's attorney stated that the record was complete and there were no outstanding requests for medical records. (T. 42.) The ALJ held the record open so that Plaintiff could obtain the full functional capacity report from Ms. Ennis. (T. 66.) At the hearing Plaintiff raised what could be construed as an objection to the consultative examination (T. 67-70), which the ALJ addressed in his decision (T. 31). The ALJ acted within his discretion in ordering a consultative exam, the ALJ did not fail to adhere to the Regulations in requesting an

---

[3] In addition, Plaintiff's argument, that "there [was] no evidence in the record that the treating sources ever indicated a preference to not perform the [consultative] examination" is without merit. (Dkt. No. 14 at 23 [Pl.'s Mem. of Law].) At the hearing Plaintiff's counsel stated that Dr. Morell "has policy of not answering functional capacity questions for anybody." (T. 65.)

examination from a source that was not a treating source; and further, any procedural error would be harmless.  Therefore, it is recommended that the Commissioner's decision be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      June 2, 2016

                               William B. Mitchell Carter
                               U.S. Magistrate Judge